MARY A. WARREN, Respondent, v. TOWNLEY MANUFACTURING COMPANY, Appellant.

St. Louis Court of Appeals.    Submitted on Briefs February 5, 1913.    Opinion Filed April 8, 1913.

1. MASTER AND SERVANT: Death of Servant: Evidence. In an action for the death of a servant, evidence concerning the manner in which the work was carried on, which did not refer to any general custom or usage among people engaged in like work, was not vulnerable to an objection that it was inadmissible because no general custom was pleaded.

2. ——: ——: **Safe Place to Work: Sufficiency of Evidence.** In an action for the death of a servant, caused by a loose branch falling upon him from a tree to which was attached certain appliances that decedent was working with, evidence *held* sufficient to warrant a finding that the master was negligent.

3. ——: **Injury to Servant: Safe Place to Work.** Where it is not the custom to confine employees to any particular work nor to give them specific orders to do any particular work, but all assist in performing whatever work is to be performed, irrespective of any particular order, one of such employees who is injured through the master's negligence, while standing idly by for a moment at a point where all are working, is entitled to recover.

4. ——: **Death of Servant: Safe Place to Work: Instructions.** In an action for the death of a servant, caused by a loose branch falling upon him from a tree to which was attached a cable which suspended a movable carriage, *held* that whether the master was negligent in failing to put a cover over the carriage, extending over the place where decedent was standing, was a question for the jury; *held, further,* that the *causa causans* was permitting the loose branch to remain in the tree, so that it was not so material, one way or the other, what the jury may have found as to the duty of the master to put such a cover over the carriage; and hence it is *held*, that the court did not err in refusing to instruct the jury that it was not the duty of the master to put a cover over the carriage extending entirely over it and covering the place where decedent was standing.

Appeal from Dunklin Circuit Court.—*Hon. W. S. C. Walker,* Judge.

AFFIRMED.

*T. R. R. Ely* and *J. L. Fort* for appellant.

*Abington & Phillips* for respondent.

REYNOLDS, P. J.—Action by plaintiff as widow of Calvin Warren, to recover damages for the death of her husband, alleged to have been caused by the negligent acts of defendant. Defendant is a company engaged in the business of converting logs into shingles

and other products at its mill in Dunklin county. At the time of the accident which is the foundation of this action, defendant was placing certain machinery for the conveyance of logs to its mill. A part of the machinery was what is called an overhead skid, consisting of a stationary engine located upon a flat car set on a spur track, that track ending against a tall cypress tree, called a "head tree." A steel cable, designated as a carriage line, was wrapped around this tree about forty feet above the ground and carried from there to another tree called the "tail tree," which was about six hundred feet away, and fastened around that tail tree. There was a movable pulley or carriage, suspended from this cable or carriage line, which was moved from one end to the other by means of ropes attached to the carriage, these ropes being operated by a revolving drum which received its power from the stationary engine. Hanging from the movable carriage was a steel rope, at the end of which was a set of tongs, which, when fastened to logs near the tail tree were carried by steam power and, by means of this movable carriage, along the cable to the place desired.

On the day of the accident, the flat car on which this engine was in place was immediately under the top of the head tree. Preliminary to the stringing of the cable between the head and tail trees, the foreman of defendant in charge of the gang selected a tall cypress tree as the head tree. This tree was partly dead, having some dead and some living branches on it toward the top, while the top of the tree itself was dead. Before wrapping the end of the cable around this tree, the foreman directed a man to climb the tree, cut off the top and cut off some dead limbs. This man went up the tree by means of climbers, cut off the top, which fell to the ground, cut off a large limb under the top, that also falling, and then partially cut another limb and broke it off, so that it also

fell to the ground. He climbed down from the tree and the men below appear to have then fastened guy lines to the tree, shaking it to detach any loose or dead branches that might be lodged in the tree. The cable was then stretched from the head tree to the tail tree. The carriage line was then attached and the gang appears to have been taking the slack out of the overhead carrier line or cable in some way, not very clear to us. At any rate, the carriage or "skidder," as it is called, with the engine and the drum on it, was directly at the foot of this tree. While some of the gang were taking in the slack of the cable, the strain upon it shook the head tree and a branch of one of the limbs which had been cut off and which it appears had lodged in the upper part of the tree and which was between three and four feet long and about two and a half inches in diameter, fell and struck plaintiff's husband, killing him.

This is as nearly accurate a statement of the situation as it is possible to make from the testimony and from the photographs which accompany the abstract and which were identified as fair representations of the condition at or about the time of the accident. The members of the gang who were not actually at work were standing around, or helping in whatever had to be done; among them plaintiff's husband, whose direct employment was that of a log scaler for the company defendant. He was standing on the end of the carriage or skidder, within two or three feet of the body of the head tree, not doing anything in particular but apparrently waiting to go to work, and assisting, as far as was necessary, the other members of the gang in doing anything that had to be done in connection with this preparatory work. There was a roof directly over the engine and drum of this skidder, but the end toward the tree and on which end plaintiff's husband was standing had no covering over it.

The negligence charged is failing to have a covering over this carriage; negligence in selecting a dead and rotten tree; negligence in failing to remove this dead branch which had lodged in the tree; briefly, failing to use ordinary care in providing plaintiff's husband with a reasonably safe place in which to do his work.

The trial was before the court and a jury, and a verdict returned in favor of plaintiff in the sum of $2500, upon which judgment was rendered. Defendant, filing its motion for a new trial, as well as one in arrest, and excepting to the action of the court in overruling these motions, has duly perfected its appeal to this court.

There are five errors assigned. First, to the error of the court in permitting plaintiff to offer evidence tending to prove the custom of defendant's servants in putting up the skidder as no such custom was pleaded in plaintiff's petition. Second and third, to error of the court in refusing instructions offered by defendant at the close of plaintiff's evidence and at the close of all the evidence, to the effect that plaintiff was not entitled to recover. Fourth, to the error of the court in refusing to give an instruction asked by defendant, as follows: "That defendant was not guilty of negligence in failing to maintain a roof or cover over the engine and skidder or the engine or skidder, or any part or portion of them, or either of them, and your verdict cannot be for the plaintiff on the ground of such failure, if you find from the evidence that defendant was guilty of such failure." The fifth error assigned is to the giving of instructions asked by plaintiff.

Taking up the first assignment of error, we do not think it is tenable. It is true that no particular custom was pleaded but what counsel refers to as custom, that word being used in putting the question by counsel for plaintiff when drawing out the evidence, considered in the light of the answers and as evidently understood by the witnesses and by the jury, does not appear to

have referred to any general custom or usage among people engaged in like work, but referred to the manner in which the men composing these gangs were in the habit of doing this work, evidence clearly admissible under the pleadings and the issues; nothing more than a presentation to the jury, of the manner in which the machinery was set up and operated by these gangs, by the employees of defendant, when setting up and operating the appliances; tending to show that on this particular occasion it was done in the manner usually pursued by the employees of defendant when about this particular work. There was no general custom attempted to be proved, in the legal meaning of that term. What was in evidence and what was elicited by these questions, was, as before stated, evidence showing how work of this kind was carried on by the defendant. We see nothing improper in this and certainly no prejudicial error in its admission.

The second and third assignments of error, challenging the presence of any substantial evidence warranting a recovery, are not tenable. A careful reading of the testimony for plaintiff shows that there was substantial evidence to go to the jury on the averments of negligence in the petition, the answer being a general denial without any plea of contributory negligence and there being no attempt to apply the doctrine of fellow-servants. It is true that defendant's testimony tended to prove that very great care had been taken to see that no loose limbs or branches were left in the tree before the machinery was put in motion, and while the witnesses testified that they had endeavored to free the tree from any loose branches, it is clear that they had not dislodged this branch. This, with other facts in evidence, was evidence from which the jury had a right to find lack of ordinary care. On the first strain put upon the tree, the first time this tree was made to vibrate from the action of the carriage on the cable, this loose branch fell out and fell down from a great

distance, sixty or seventy feet, as we understand it, although one witness said, "something like a hundred feet," and struck plaintiff's husband, who was standing close to the body of the tree.

It is argued that plaintiff's husband was not engaged in any work there, and had no business to be standing where he was; that he had not been ordered into that place by the employer or the employer's agents. We cannot agree to this proposition. It is true he was not engaged in the immediate business of his employment, that is was not then scaling logs, but it clearly appears from the evidence of all the witnesses in the case, even from the foreman of the gangs there, that it was not the custom or habit to confine the members of these gangs to any particular work at all times, or to give them specific orders to do any specific work, but when work was to be done, all assisted in carrying on whatever was to be done at the time, irrespective of any particular orders. We decline to say that when one of them happens to be standing idly by for a moment, at a point where all were working, he does so at his peril.

In a manner this also covers the assignment of error in refusing the instruction asked by appellant, to the effect that it was not defendant's duty to have a top or cover on this skidder, extending entirely over it, and covering the place where the deceased was standing. It would have been error for the court to have declared as a matter of law, as this instruction asked, that it was not the duty of defendant to have a covering over this part of the carriage. The duty of defendant was to be measured by the facts in the case. If it was negligence to operate the skidder there without a cover, then it was the duty of defendant to provide a cover; whether it was negligence under the facts, was a question for the jury, and they were correctly instructed as to that issue. What the jury may have found as to the necessity of a cover over the front part

of the skidder, is not so material one way or the other. The *causa causans* was permitting this loose branch to remain in the tree. That was assigned as negligence and the jury were properly instructed as to that. If the branch had not fallen, it was immaterial whether there was a cover over the fore part of this carriage. But if it did fall, it seems clear that if a cover had been over the fore part of the skidder, that the limb would not have penetrated through the cover. We are unable to understand how defendant was prejudiced by the court refusing to tell the jury that it was not the duty of defendant to have this covering over that part of the carriage.

It is unnecessary to set out the instructions given at the instance of plaintiff. It is sufficient to say that they followed the allegations in the petition and the proof with sufficient accuracy and correctness to sustain them as proper instructions. We find no reversible error in any of them as given.

On consideration of the whole case we think that it was a case for the jury and that they were properly instructed and that no error to the manifest prejudice of defendant was committed in the trial of the cause. No complaint whatever is made of the amount of the verdict and we see no reason to disturb it. The judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.*, concur.